5L 227
12L 9

J. T. PECK *et al. v.* WM. HOUSTON *et al.*

1. EJECTMENT. *Boundaries. Adverse possession. Statute of limitations.* In an action of ejectment, the plaintiffs claimed under a grant obtained in 1831, the defendants under an entry made in 1836 and grant thereon issued in 1848, and continuous adverse possession of portions of the land within the entry and grant. There was evidence tending to show that the person making the entry in 1836 had, at the time, under enclosure portions of the lands under entries made previous to 1831, the boundaries of which, if ever surveyed, were abandoned after the entry of 1836, which included them all, and could not, in a single instance, be identified at the trial. The enclosures of the defendants had been largely extended since 1831, and since the entry in 1836 and the grant in 1848. *Held,* that the title of the defendants had been perfected by the statute of limitations to the extent of the boundaries of their grant and survey.

2. SAME. *Same. Interlap.* There is no foundation laid for the doctrine of interlap in the case of conflicting grants, where the possession set up by one of the parties is a possession of adjacent lands of that party included in a different grant from the one relied on in the suit.

FROM COCKE.

Appeal in error from the Circuit Court of Cocke county. J. G. ROSE, J.

O. C. KING for Peck.

WM. McFARLAND and WM. McSWEEN for Houston.

COOPER, J., delivered the opinion of the court.

This action of ejectment was tried by the judge without a jury. He gave judgment for the defendants, and the plaintiffs appealed in error.

· The plaintiffs claim the land in dispute under a grant from the State to their ancestor, dated December 29, 1831. The defendants claim under a grant to Howell Houston, dated July 25, 1848, for 4,000 acres, issued on an entry made in 1836, and on another grant to Peter J. Davis and Stephen Huff, dated September 16, 1833, for two hundred acres. The suit was brought December 30, 1873. The circuit judge found, as a fact, that the possession of the defendants and those under whom they claim had been actual, continuous and adverse at least since 1839, by actual enclosures upon the land in dispute. That as to the 4,000 acre tract, the possession had been under color of title for a period of more than seven years, excluding the time from the 6th of May, 1861, to the 1st of January, 1867. That as to the two hundred acre tract, the defendants had shown an outstanding and subsisting title, sufficient to repel the plaintiffs from a recovery of the lands embraced therein. There is evidence to sustain these findings of fact.

The principal contention of the plaintiffs in the court below, and the same position is assumed in this court, was that, at the date of the entry of the ancestor of the plaintiffs and of the grant to him, Howell Houston was in possession of portions of the land under pre-existing entries; that the entry and grant were void by express statute to the extent of the boundaries of the pre-existing entries; that the proof did not show affirmatively any extension of the actual occupation beyond such boundaries; and, consequently, that the possession could not be extended to the lines

of the subsequent 4,000 acre grant, under the princi-
ple settled in *Smith* v. *Lee,* 1 Cold., 549.    The cir-
cuit judge conceded the correctness of the position
since the passage of the act of 1851, notice not having
been given as required by the act.    He, was of opin-
ion, however, that in 1831 the law favored the prior
enterers and occupants only in the way of allowing
them. extensions of time within which to perfect their
titles; that the entry and grant of the ancestor of
the plaintiffs was, therefore, not void as to the older
entries embraced within it, but would be good if the
older entries were abandoned, or a *hiatus* occurred
under the extension acts in perfecting them by grant.

It is now argued that his Honor was in error in
this regard, and the learned counsel for the plaintiffs
refers to the act of 1824, ch. 22, sec. 6, as contain-
ing similar provisions to the act of 1851.    The latter
act made it unlawful for any person to enter land on
which another resides, or which is cultivated, or has
been previously entered by him, until such person
gives at least thirty days' notice in writing to the
person residing on or cultivating said land, or to the
previous enterer or his assignee, of his intention to
enter the same; and declared void any entry made
or grant obtained contrary to the provisions.    This
act came under the consideration of the court, and
was held to apply to an occupant entry in *Scott* v.
*Price,* 2 Head, 533.    The subsequent grant was held
to be void as against the occupant entry.    The act
of 1824, ch. 22, sec. 6, provides:    " That it shall not
be lawful for any person to enter any land on which

another resides, or which is cultivated by another, until such person shall have given in writing at least thirty days' previous notice to the person residing on or cultivating said land, of his intention to enter the same; and any entry made or grant obtained contrary to the provisions of this section, shall be utterly void in law and equity."

The distinction between the two acts is, that the earlier act protects the occupant only to the extent of the land which he resides on and cultivates under enclosure. *Den* v. *Nixon*, 10 Yer., 518; *Horn* v. *Childress*, Meigs, 102; *Kelly* v. *Hare*, 1 Hum., 163. The later act makes the subsequent entry and grant void to the extent of the land previously entered. If, in the case before us, the entry and grant of the ancestor of the plaintiffs be only void as to the land under cultivation at their respective dates, the law contended for by the counsel of the plaintiffs would not apply. For the proof is clear that the lands under cultivation and enclosure within the boundaries of the grants under which the parties claim were largely increased after the dates of the entry and grant of the plaintiffs in error, and even after the issuance of the 4,000 acre grant.

It may be implied from the proof, rather than considered as proved, that Howell Houston did claim under entries made before 1830 a part of the land actually occupied by him. The lines and boundaries of these entries, if they were ever surveyed, have been, since the entry of the 4,000 acres in 1836, abandoned and lost sight of. They cannot now be found, nor

Peck *v* Houston.

even a beginning .corner of any of them.   The evidence of the surveyors appointed by the court below to ascertain these boundaries, leaves not a doubt of the fact.   In the proceedings instituted in the chancery court, after the death of Howell Houston, to sell his lands for the payment of his debts, the master reported that the survey on the entry of the 4,000 acres in 1836 covered all the lands then owned by Houston in the county, including several tracts purchased and several entries made by him, his object being, the master adds on information, "in entering them all in one survey to have them consolidated." This entry was sold under those proceedings, the sale being confirmed in 1849.   The purchaser and the defendants who claim under him have, since that sale, held the land under that entry and the grant obtained thereon in 1849. · There is no evidence of a holding by any other boundaries.   Under these circumstances, the finding of the circuit judge that the older entries were abandoned, and that the defendants, and those under whom they claim, had held under the grant for more than seven years, is sustained, the enclosures having been extended during that period, and it not being shown that the new enclosures were within the boundaries of entries or deeds antedating the entry and grant of the ancestor of the plaintiffs.   And, even if the law were as contended for by the plaintiffs, the court, drawing conclusions as a jury, might well find that there has been an extension of possession beyond the lines of the old entries and deeds sufficient to vest title, by virtue of the statute of limitations, to

the extent of the boundaries of the 4,000 acre grant. The plaintiffs insist that the outstanding title set up under the 200 acre grant was not *bona fide,* but abandoned. The circuit judge has found otherwise, and there is evidence to sustain the finding.

Plaintiffs also insist that they and their ancestor have held possession of these lands under a tenant. But the proof shows that the tenant was not occupying land included in the 4,000 acre grant in controversy. He was living on land included in a different grant. There is no foundation laid for the doctrine of interlap.

Judgment affirmed.